UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10CV625-RJC

| | |
|---|---|
| MARSHALL McNEIL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| LEWIS SMITH, Administrator, Albemarle | ) |
| Correctional Institution, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court upon Petitioner Marshall McNeil's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. No. 1); Respondent Lewis Smith's ("Respondent") Answer and Motion for Summary Judgment (Doc. Nos. 5, 6 and 7); Petitioner's Traverse and Response to Respondent's Motion for Summary Judgment (Doc. Nos. 11 and 12); Petitioner's Motion to Suspend Certain Provisions of Rules 28 U.S.C. § 2254 (Doc. No. 13); and Petitioner's Opposition (Doc. No. 16).

I.  **Factual Summary**

The North Carolina Court of Appeals summarized the facts as follows:

In this case, the State's evidence tended to show that on 12 January 2006, at approximately 2:44 a.m., Union County Deputy Sheriff Billy Joe Osteen responded to a call that someone was ringing doorbells in The Reserves housing development. Upon entering the development, Deputy Osteen proceeded to the first stop sign and saw defendant running out of the fog holding a screwdriver in his hand. Deputy Osteen exited his vehicle and told defendant to drop the screwdriver. Defendant was out of breath, wet, and covered in mud. After securing the screwdriver, Deputy Osteen asked defendant to identify himself and what he was doing in the development at 3:00 a.m. Defendant stated his name and told the deputy that he was delivering appliances. However, upon further questioning by the deputy, defendant was unable to provide the name of the company for whom he was making the

1

> delivery or the delivery address. The deputy asked defendant to direct him to the vehicle. The deputy secured defendant in the back of his patrol vehicle and traveled about two hundred feet to a red pickup truck. Deputy Osteen exited his vehicle and observed that the truck's rear axle was mired in mud in the front yard of a house under construction. There was mud on the gas pedal, brake pedal, seats, and steering wheel. Deputy Osteen observed a washer and refrigerator under a blue tarp in the back of the pickup truck. The deputy noticed that the water hoses on the washing machine had been cut.
>
> Subsequently, Deputy Osteen deemed it necessary to check the house. Upon entering the house, Deputy Osteen observed an area in the garage where the washer had been located. He saw two pieces of hose attached to hot and cold water spigots remaining where they had been cut. There was a dolly in the garage and muddy wheel tracks leading to the front door. There was no one inside the house.
>
> Detective Lynn Yow with the Union County Sheriff's department arrived on the scene at approximately 4:00 a.m. She observed cut lines on the washing machine and cut plumbing lines outside the wall of the house that internally connect the washing machine. The water line connected to the refrigerator was pulled from the wall and the water line to the ice maker in the refrigerator was also pulled from the wall. There was mud on the kitchen floor, laundry room, and throughout the floor leading to the front door. There was mud throughout the house. Detective Yow testified that a box cutter, screwdriver and tire tool were recovered inside the red pickup truck.

State v. McNeil, 680 S.E.2d 904, at *2 (N.C. Ct. App. 2009).

## II.     Procedural History

On April 1, 2008, Petitioner was convicted after trial by jury of possession of burglary tools, pled guilty to achieving the status of habitual felon, and was sentenced to 127 to 162 months' imprisonment. Id. at *1. On appeal, Petitioner argued that the trial court erred in denying his motion to dismiss the charge of possession of burglary tools due to insufficient evidence. Id. On July 7, 2009, the North Carolina Court of Appeals affirmed. Id. The Supreme Court of North Carolina denied discretionary review on January 28, 2010. 692 S.E.2d 390 (N.C. 2010).

On May 28, 2010, Petitioner filed a Motion for Appropriate Relief ("MAR") with the

Union County Superior Court. (Doc. No. 7-9). That court denied Petitioner's MAR on July 14, 2010. (Doc. No. 7-10). On August 23, 2010, Petitioner filed his first certiorari petition in the North Carolina Court of Appeals. (Doc. No. 7-11). On September 7, 2010, the North Carolina Court of Appeals dismissed the petition for certiorari. (Doc. No. 7-13). On November 8, 2010, Petitioner filed a corrected certiorari petition in the North Carolina Court of Appeals which was denied on November 22, 2010. (Doc. Nos. 15-2 and 15-4).

On December 7, 2010 Petitioner submitted a Petition to this Court under 28 U.S.C. § 2254 alleging that (1) there was insufficient evidence of each essential element of the offense charged; (2) the trial court lacked jurisdiction to enter judgment on the habitual felon charge due to a defective indictment; and (3) his counsel was ineffective for failing to challenge the habitual felon indictment. (Doc. No. 1).

### III. STANDARD OF REVIEW

#### A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

#### B. Section 2254 Standard

In addition to the summary judgment standard set forth above, the Court must consider

this Petition under the particular standards governing the review of habeas corpus petitions. First, 28 U.S.C. § 2254 requires a petitioner to exhaust the remedies available to him in the state courts before filing a writ of habeas corpus in the federal courts. 28 U.S.C. § 2254(b)(1)(A). Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). This "one full opportunity" includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a state post-conviction proceeding in the trial court division and then petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. GEN. STAT. §§ 7A-31, 15A-1422.

Second, 28 U.S.C. § 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d

4

445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In contrast, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (internal quotation and citation omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, 2011 WL 3489092, at *9 (4th Cir. 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)).

However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the asserted constitutional error. McCarver v. Lee, 221 F.3d 583,

591-92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392-94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494-96 (1986)).

## IV. ANALYSIS

### A. Insufficient Evidence

Petitioner contends that there was insufficient evidence of each essential element of the offense charged. The standard of review on a federal habeas corpus claim regarding insufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). The Supreme Court has held that any claim of insufficient evidence is necessarily a federal due process claim. Jackson, 443 U.S. at 321.

Petitioner raised the substance of his current insufficiency of the evidence claim on direct

appeal. The Court of Appeals denied the claim on the merits as follows:

> Defendant's sole argument on appeal is that the trial court erred in denying his motion to dismiss the charge of possession of burglary tools due to insufficient evidence.
>
> In reviewing the denial of defendant's motion to dismiss, this Court must determine whether there is substantial evidence – either direct, circumstantial, or both – to support a finding that the crime charged has been committed and that defendant was the perpetrator. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We assess the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence.
>
> Defendant was charged under N.C. GEN. STAT. § 14-55 which provides:
>
>> If any person shall be found armed with any dangerous or offensive weapon, with the intent to break or enter a dwelling, or other building whatsoever, and to commit any felony or larceny therein; or shall be found having in his possession, without lawful excuse, any picklock, key, bit, or other implement of housebreaking; or shall be found in any such building, with intent to commit any felony or larceny therein, such person shall be punished as a Class I felon.
>
> The statute defines three separate offenses. It is the second defined offense, possession of an implement of housebreaking without lawful excuse, which is applicable in this case. The burden is on the State to show two things: (1) That the person charged was found having in his possession an implement or implements of housebreaking enumerated in, or which come within the meaning of the statute; and (2) that such possession was without lawful excuse.
>
> Possession alone of the article is not the crime; the gist of the offense is its possession for the unlawful purpose of breaking into a building. Hence, although a prosecution under G.S. 14-55 does not require proof of any specific intent to break into a particular building at a particular time and place, the burden rests on the State to show beyond a reasonable doubt that the defendant possessed the article in question with a general intent to use it at some time for the purpose of facilitating a breaking.
>
> . . .
>
> We conclude, based on the evidence recited above, that a jury could reasonably infer that defendant possessed the box cutter, screwdriver, and tire tool for the purpose of using the items to facilitate a housebreaking.

State v. McNeil, 680 S.E.2d 904, at *1-2 (N.C. Ct. App. 2009) (internal quotation and citation omitted). This state court adjudication on the merits is correct. It is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See Wright v. West, 505 U.S. 277; Jackson v. Virginia, 443 U.S. 307. Respondent is entitled to judgment as a matter of law.

**B.     Jurisdiction**

Petitioner contends that the trial court lacked jurisdiction to enter judgment on the habitual felon charge because the indictment was defective. In support of this claim, Petitioner argues that an habitual felon indictment must contain an allegation that the defendant committed a felony offense while already a habitual felon–and his indictment did not. (Doc. No. 1 at 20).

Petitioner raised the substance of this claim in his MAR. (Doc. No. 7-9 at 3). The court summarily denied the MAR on procedural grounds because Petitioner was in an adequate position to have raised his MAR contentions on direct appeal, but did not do so. (Ex. 8). See N.C. GEN. STAT. § 15A-1419(a)(3) and (b) (2010) (claim shall be denied when defendant was in adequate position to have raised it in prior appeal but did not do so, absent cause and prejudice or fundamental miscarriage of justice, i.e., actual innocence). See also Rose v. Lee, 252 F.3d 676, 685 n.5 (4th Cir. 2001) (North Carolina's post-conviction procedural bar, see N.C. GEN. STAT. § 15A-1419(a)(3) and (b), is now mandatory). Petitioner has not met his burden in establishing cause and prejudice for failing to raise this claim on direct appeal. See McCarver, 221 F.3d at 591-92. Therefore, Petitioner has defaulted this claim, barring collateral review.[1]

---

[1] To the extent that such claim is not procedurally barred, it is also without merit. The Court has reviewed the state court indictment (Doc. No. 7-4 at 8-11) and concludes that the habitual felon indictment was sufficient to give Petitioner adequate notice of the charge against him in order to prepare a defense. See Stroud v. Polk, 466 F.3d 291, 296 (4th Cir. 2006)

### C. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective for failing to challenge the habitual felon indictment. Petitioner raised the substance of this claim in his MAR. (Doc. No. 7-9 at 6). The state court summarily denied the MAR on procedural grounds because Petitioner was in an adequate position to have raised his MAR contentions on direct appeal, but did not do so. (Doc. No. 7-10). See N.C. GEN. STAT. § 15A-1419(a)(3) and (b). Petitioner has defaulted this claim, barring collateral review.[2] See N.C. GEN. STAT. § 15A-1419(a)(3); Sharpe, 593 F.3d at 377 (Ineffective assistance of counsel claim procedurally barred under North Carolina law because not raised on direct appeal); Lawrence, 517 F.3d at 714 (same).

### V. ORDER

**THEREFORE IT IS HEREBY ORDERED** that

(1) Respondent's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**;

(2) Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. No. 1) is **DENIED** and **DISMISSED;**

(3) Petitioner's Motion to Suspend Certain Provisions of Rules 28 U.S.C. § 2254 (Doc. No. 13) is **DISMISSED as moot;** and

---

(upholding North Carolina's short form murder indictment as constitutionally adequate even though it did not list all essential elements of offense). Further, alleged errors in state court indictments do not warrant federal habeas relief unless they rendered the entire state court proceeding fundamentally unfair. See Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). Finally, because Petitioner entered a knowing, voluntary, and counseled guilty plea to having attained the status of habitual felon, (Doc. No. 7-4 at 18-21; Doc. No. 7-6 at 42-57), he waived any non-jurisdictional errors in the habitual felon indictment. See Tollett v. Henderson, 411 U.S. 258, 266 (1973).

[2] To the extent that such claim is not procedurally barred, it is also without merit. Because there was no defect in the habitual felon indictment, counsel could not have been ineffective under Strickland v. Washington, 466 U.S. 668, 687-91 (1984), for failing to make a meritless challenge to the indictment. See Sharpe, 593 F.3d at 383 ("Counsel is not required to engage in the filing of futile motions.").

9

(4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

Signed: September 9, 2011

Robert J. Conrad, Jr.
Chief United States District Judge